```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                            )
          v.                )    Criminal No. 08-215
                            )
MARVIN HALL                 )
```

**DEFENDANT MARVIN HALL'S MEMORANDUM IN MITIGATION OF SENTENCE IN SUPPORT OF A SENTENCE OF TIME SERVED**

Defendant Marvin Hall, through his counsel, Assistant Federal Public Defender Elisa A. Long, respectfully files this Memorandum in Mitigation of Sentence in Support of a Sentence of Time Served.

### I.  INTRODUCTION

Mr. Hall's advisory sentencing guideline range, as set forth in the Presentence Report, is 15 to 21 months.  Mr. Hall has been in custody on this matter for more than 25 months, without the consideration of "good time credit."  PSR ¶ 51.  With the consideration of "good time credit," a time served sentence is the equivalent of a sentence of approximately 30 months.

In addition, the months that Mr. Hall has been in custody have been particularly difficult because he has been held in the Disciplinary Housing Unit and Protective Custody the entire time based upon "information received from the Post-Gazette," not any

conduct on the part of Mr. Hall while at the jail.  Allegheny County Jail Report, dated June 12, 2008, attached as Exhibit D.[1]

Given these facts and circumstances detailed below, a sentence of time served is appropriate, and the imposition of any additional jail time would be unnecessary to achieve the purposes of sentencing.  In support of this request, Mr. Hall provides several letters of support from community members, including Richard Taylor, a close personal friend of Mr. Hall's; Clarion County Commissioner David C. Cyphert; and Eric Cicciarelli, a small business owner who has a professional relationship with Mr. Hall.  The letters are attached as Exhibits A through C.

## II.  MR. HALL'S HISTORY AND CHARACTERISTICS

Mr. Hall is a 52 year old man who has lived his entire life in rural areas and small towns in the Clarion, Pennsylvania

---

[1] The Pittsburgh Post-Gazette, the Pittsburgh Tribune-Review, and other online, print, and television media carried extensive coverage of the arrest of Mr. Hall and three other men in related cases. See, e.g., Feds Arrest 3 in Clarion, Clearfield Weapons Raids, http://www.post-gazette.com/pg/0816/888778-100.stm, 6/10/2008; FBI: Suspects Had Cache of Weapons, http://kdka.com/local/domestic.terrorism.suspects.2.744322.html, 6/10/2008; and Militia Member Gets House Arrest, http://www.pittsburghlive.com/x/pittsburghtrib/news/s_572278.html, 6/12/2008.

area. When he was 16 years old, Mr. Hall married and started a family, dropping out of school to work full time to support his family. He and his wife had three children, Christopher, Jason, and Scott Hall.

As his childhood friend, Richard Taylor, explains:

> Marvin had good relations within any community he has lived in and done many favors and jobs for friends and neighbors . . . [H]e helped me build my garage as I was not able to do it. Marvin is a very good man at heart . . . .

Exhibit A at 2. Clarion County Commissioner David G. Cyphert states that "Mr. Hall's work ethics in his former business have been excellent, and as a friend, he has always been top notch." Exhibit B.

When Mr. Hall's youngest son Scott was just 16 years old, he died of Hodgkin's disease. Scott's death was devastating to Mr. Hall and the rest of the family. Several years later, Mr. Hall endured another difficult time when he and his wife divorced. As Commissioner Cyphert observes:

> I have known Marvin through some very trying times in his life, from the death of his son, the passing of his father, and even through a domestic separation to name a few. At no time have I ever witnessed Marvin express aggressive behavior, or in my opinion, actions that would be threatening in nature.

Exhibit B. Richard Taylor notes: "We all have obstacles we deal with each and every day- Marvin may have had a few more, but he

dealt with them in a smooth, gentle way." Exhibit A at 2. Mr. Taylor also explains, "I know Marvin would never harm anyone . . . . he is definitely not a threat." Exhibit A at 2.

Mr. Hall has been employed since the age of 13 at an oil and gas drilling company, as a warehouse manager, and as a licensed blaster. Mr. Hall's father owned the American Drilling Company, where Mr. Hall began work as a teenager, and Mr. Hall and his brother took it over when their father retired. Mr. Hall now owns the drilling company on his own. Eric Cicciarilli, a business acquaintance of Mr. Hall's, states:

> I have known Mr. Hall for about 20 years or more, the way I know him is through his business of drilling horizontal holes under roads. Different times I need a hole under a road to install a pipeline, and Marvin was recommended to me from other contractors . . .
>
> Marvin has been drilling my horizontal holes under roads ***from the time I had him do the first hole***. He always is very professional in his workmanship and personality. When we set a time and day to do the job[,] he is always prompt and has the right equipment to complete the job.

Exhibit C (emphasis added).

After the death of his son, Mr. Hall began experiencing depressive episodes, and he was placed on medication to stabilize him. PSR 40. In 1997, he was diagnosed with Bipolar Disorder. PSR 40. Mr. Hall has been taking medication to

4

manage the Bipolar Disorder for several years, and he is currently taking lithium on a daily basis. PSR 40.

From 1994 to 1997, Mr. Hall struggled not only with depression but also with alcohol, and it was during these three years that all of his criminal history occurred. He has three convictions: one for driving under the influence, one for harassment (a summary offense), and one for possession of unregistered firearms. PSR 28-30. During these three years, Mr. Hall had simple assault and driving under the influence charges disposed by the Accelerated Rehabilitative Disposition Program. PSR 32-33. Mr. Hall completed the Accelerated Disposition Program successfully, and he also completed five years of federal supervised release without incident. PSR 30. According to the Probation Office, he has six criminal history points and is in criminal history category III. PSR 31.

**II. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE**

At the time of his arrest, Mr. Hall was immediately cooperative with law enforcement agents and admitted that the firearms were his. There is no indication that Mr. Hall had the firearms for any reason other than his personal protection and the protection of Melissa Huet, Mr. Hall's girlfriend who was residing with him at the time of his arrest.

Mr. Hall's base offense level under the advisory sentencing guidelines is 14 pursuant to U.S.S.G. 2K2.1 because he is prohibited person from possessing a firearm due to his prior felony conviction. PSR 18. No enhancements apply, and his adjusted offense level is 12. The maximum penalty is 10 years of incarceration and 3 years of supervised release. PSR 50 & 53.

The government's three year investigation into alleged militia activity in the Clarion and Clearfield County areas resulted in the arrest of Mr. Hall and at least three other individuals. Mr. Hall was arrested with Perry Landis, Morgan Rose, and Bradley Kahle. Two of these individuals have resolved their cases and received relatively short sentences. In one of these cases, United States v. Perry Landis, the United States Attorney's Office filed a second indictment charging Mr. Landis with two counts of knowingly and unlawfully distributing explosive materials. The second indictment considerably lowered Mr. Landis' guideline range, and the government dismissed the original indictment. United States v. Landis, Crim. No. 09-166 (W.D. Pa. 2009), Doc. Nos. 1 & 10; United States v. Landis, Crim. No. 08-218 (W.D. Pa. 2008), Doc. Nos. 1 & 55. Mr. Landis ultimately received a sentence of time served, which was not opposed by the government, after serving approximately 15

months. In another case, <u>United States v. Morgan Jones</u>, Mr. Jones entered a guilty plea to one count of engaging in the business of selling firearms without a license. <u>United States v. Jones</u>, Crim. No. 08-217 (W.D. Pa. 2009), Doc. No. 83. Mr. Jones received a sentence of time served, after serving approximately 16 months. Again, even thought the advisory guideline range was 18 to 24 months, the time served sentence was unopposed by the government. <u>United States v. Jones</u>, Doc. Nos. 88 & 92. In the third case, Bradley Kahle was found not guilty by a jury of possession of an unregistered firearm in violation of 26 U.S.C. §5681(d). <u>United States v. Kahle</u>, Crim. Case No. 08-022, Doc. No. 97.

Mr. Hall has been in custody since his arrest in June of 2008. His time in custody has been spent in either the Disciplinary Housing Unit (DHU) or Protective Custody based upon media coverage of his case. <u>See</u> Allegheny County Jail Report, dated June 12, 2008, attached as Exhibit D. While in the DHU, Mr. Hall was locked in his cell for 22 hours a day, ate his meals in the cell, and was only allowed out to shower and for recreation one hour per day. During the recreation hour, he was confined to a small cage where he was permitted to exercise. He was not allowed phone calls, nor was he permitted to have any reading material other than legal material. While in Protective

Custody, Mr. Hall faces significant restrictions not imposed on inmates in General Population.  For example, he is not permitted to go to chapel, the gym, or the law library, and his access to television is limited.  Visitation is limited to three one hour periods of time each week.  Despite these conditions which seem unfairly imposed, Mr. Hall has never engaged in any misconduct while at the Allegheny County Jail.

### III. BASED UPON THE ABOVE FACTS AND CIRCUMSTANCES, A SENTENCE OF TIME SERVED IS WARRANTED.

Based upon Mr. Hall's history and characteristics, the nature and circumstances of the offense, and the need to avoid unwarranted disparities, a sentence of time served is warranted.  See 18 U.S.C. 3553(a).  Mr. Hall's history and characteristics, which are detailed above, include his steady employment history, his generous and gentle nature, and his struggles with Bipolar Disorder and alcohol. Also, Mr. Hall's acceptance of acceptance of responsibility for his wrongdoing and his honesty with the law enforcement agents is properly considered as part of his history and characteristics.

With respect to the nature and circumstances of the offense, Mr. Hall possessed two firearms in his own home after being convicted of a felony offense.  The firearms were for his

protection and the protection of his girlfriend. Nonetheless, Mr. Hall understands that he cannot, under any circumstances, possess a firearm.

With respect to the need to avoid unwarranted disparities among similarly situated defendants, as detailed above, two other defendants arrested and prosecuted as part of the same investigation received sentences of time served, which equate to sentences of approximately 15 months and 16 months for each. The third defendant arrested with Mr. Hall was acquitted. A sentence of time served for Mr. Hall, which is the equivalent of a 30 month sentence if good time credit is considered, does not represent an unwarranted disparity with other defendants similarly situated.

In sum, a sentence of time served with a period of supervised release adequately takes into account Mr. Hall's history and characteristics, the nature and circumstance of the offense, and the need to avoid unwarranted disparities.[2]

A sentence of time served, which exceeds the high end of the advisory guideline range of 15 to 21 months, is "sufficient but not greater than necessary" to achieve the goals of

---

[2] Restitution is not an issue in this case, and Mr. Hall consented to the forfeiture of the relevant items in the plea agreement.

sentencing.  18 U.S.C. § 3553(a)(2).  A sentence of "time served" adequately reflects the seriousness of the offense and provides just punishment for the conduct in this case- the unlawful possession of a firearm by a convicted felon in his own home.  Mr. Hall has learned from his wrongdoing and his separation from his family and his community for the past 25 months has deterred him from future misconduct.  He is not a danger to the public: He does not have a significant criminal history nor does he have a pattern of engaging in violent or aggressive conduct.  He has also proven himself amenable to supervision by completed five years of supervised release without incident.

Finally, any additional period of incarceration is not necessary to provide Mr. Hall with educational, vocational, or medical assistance as he has a trade and owns his own company, and, by all accounts, is a reliable and capable worker.

In sum, for the reasons stated above, a sentence of time served with a period of supervised release is sufficient, but not greater than necessary, to punish Mr. Hall for his conduct, deter him from any future wrongdoing, protect the public, and provide him with educational, vocational, and medical assistance.

WHEREFORE, Mr. Hall respectfully asks the Court to impose a sentence of time served.

Respectfully submitted,

*s/ Elisa A. Long*
Elisa A. Long
Assistant Federal Public Defender